1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   OFELIA BERTHA HAYES,                     No.  2:24-cv-1114 AC

12                 Plaintiff,

13        v.                                   **ORDER**

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

20   Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income

21   ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  For

22   the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and the

23   Commissioner's cross-motion for summary judgment will be GRANTED.

24   ////

---

[1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
§ 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental
Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including
children, whose income and assets fall below specified levels . . .").

1

# I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on July 30, 2019, and for SSI on May 6, 2020.  Administrative Record ("AR") 11.[2]  The disability onset date for both applications was alleged to be April 20, 2014.  AR 11.  The applications were disapproved initially on January 16, 2020, and on reconsideration on July 6, 2020.  AR 11.  On September 29, 2023, ALJ Vincent Misenti presided over the hearing on plaintiff's challenge to the disapprovals.  AR 31-59 (transcript).  Plaintiff appeared in propria persona and testified at the hearing.  AR 11, 32, 35.  Vocational Expert Michael Frank also testified.  AR 11, 32, 54.

On January 4, 2024, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 11-25 (decision), 26-30 (exhibit list).  On February 7, 2024, after receiving a Request for Review of Hearing Decision as Exhibit 14B, dated February 1, 2024, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3 (decision), 4-5 (exhibit list).

Plaintiff filed this action on April 12, 2024.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 3, 5.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 13 (plaintiff's summary judgment motion), 19 (Commissioner's summary judgment motion).  No reply brief is on file.

# II. FACTUAL BACKGROUND

Plaintiff was born in 1970, and accordingly was, at 44 years old, a younger individual under the regulations as of the alleged disability onset date, but an individual closely approaching advanced age as of the decision.  AR 24, 310; see 20 C.F.R §§ 404.1563(c)-(d), 416.963(c)-(d) (same).  Plaintiff has a high school education and can communicate in English.  AR 79, 282.  She worked as a record mastering technician from 1999 to 2022, a cashier and stocker from 2003 to 2004, a home care provider for some time in 2004, and a pharmacy technician from 2004 to 2018.

---

[2]  Two copies of the AR are electronically filed collectively as ECF No. 10 (AR 1 to AR 2416).

1    AR 79.  Asserted conditions include fibromyalgia, carpal tunnel syndrome ("CTS") in both

2    hands, neuropathy, blurred vision, neck and shoulder injury, migraine headaches, anxiety

3    disorder, diabetes mellitus, withdrawals from fentanyl, high blood pressure, acid reflux, IBS,

4    sleep apnea, memory loss, and depression.  AR 283.

5    III.  LEGAL STANDARDS

6        The Commissioner's decision that a claimant is not disabled will be upheld "if it is

7    supported by substantial evidence and if the Commissioner applied the correct legal standards."

8    Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

9    Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

10   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

11       Substantial evidence is "more than a mere scintilla," but "may be less than a

12   preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

13   evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

14   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

15   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

16   suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

17       Although this court cannot substitute its discretion for that of the Commissioner, the court

18   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

19   evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

20   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

21   court must consider both evidence that supports and evidence that detracts from the ALJ's

22   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

23       "The ALJ is responsible for determining credibility, resolving conflicts in medical

24   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

25   Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

26   which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

27   278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

28   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

3

1    v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

2    2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

3    evidence that the ALJ did not discuss").

4        The court will not reverse the Commissioner's decision if it is based on harmless error,

5    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

6    ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

7    2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

8    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

9                              IV.  RELEVANT LAW

10        DIB and SSI are available for every eligible individual who is "disabled."  42 U.S.C.

11    §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is unable to "engage in any

12    substantial gainful activity by reason of any medically determinable physical or mental

13    impairment which can be expected to result in death or which has lasted or can be expected to last

14    for a continuous period of not less than 12 [twelve] months[.]"  42 U.S.C. §§ 423(d)(1)(A),

15    1382c(a)(3)(A); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

16        The Commissioner uses a five-step sequential evaluation process to determine whether an

17    applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

18    Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

19    process to determine disability" under Title II and Title XVI).  The following summarizes the

20    sequential evaluation:

21            Step one: Is the claimant engaging in substantial gainful activity?  If
22            so, the claimant is not disabled.  If not, proceed to step two.

     20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).
23

24            Step two: Does the claimant have a "severe" impairment?  If so,
             proceed to step three.  If not, the claimant is not disabled.

25    Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

26            Step three: Does the claimant's impairment or combination of
             impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
27            Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
             step four.
28

                                        4

1  Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

2          Step four: Does the claimant's residual functional capacity make him
   capable of performing his past work?  If so, the claimant is not
3  disabled.  If not, proceed to step five.

4  Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

5          Step five: Does the claimant have the residual functional capacity
   perform any other work?  If so, the claimant is not disabled.  If not,
6  the claimant is disabled.

7  Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

8       The claimant bears the burden of proof in the first four steps of the sequential evaluation

9  process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

10 disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

11 sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

12 disabled and can engage in work that exists in significant numbers in the national economy."  Hill

13 v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

14                         V.  THE ALJ's DECISION

15     The ALJ made the following findings:

16         1. The claimant meets the insured status requirements of the Social
   Security Act through December 31, 2023.
17

18         2. [Step 1] The claimant engaged in substantial gainful activity
   during the following periods: April 2014 to December 2014 and
19 January 2016 to December 2016 (20 CFR 404.1520(b), 404.1571 et
   seq., 416.920(b) and 416.971 et seq.).

20         3. However, there has been a continuous 12-month period(s) during
   which the claimant did not engage in substantial gainful activity.  The
21 remaining findings address the period(s) the claimant did not engage
   in substantial gainful activity.
22

23         4. [Step 2] The claimant has the following severe impairments:
   bilateral carpal tunnel syndrome (CTS), cubital tunnel syndrome,
24 degenerative disc disease of the cervical spine, left shoulder
   impingement, diabetes mellitus with peripheral neuropathy,
25 fibromyalgia, anxiety disorder and depressive disorder (20 CFR
   404.1520(c) and 416.920(c)).

26         5. [Step 3] The claimant does not have an impairment or combination
   of impairments that meets or medically equals the severity of one of
27 the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
   (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
28 416.926).

6. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional pushing and pulling, occasional overhead reaching, and frequent handling bilaterally. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never climb ladders and scaffolds. She cannot work at unprotected heights. She must avoid concentrated exposure to moving mechanical parts. She is limited to understanding, remembering and carrying out simple, routine and repetitive tasks, can use judgment limited to simple work-related decisions, and is capable of interacting with the public occasionally.

7. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. [Step 5] The claimant was born on January 25, 1970, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

10. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 13-25.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 25.

////

////

////

6

1              VI.  ANALYSIS

2      A.  The ALJ's Evaluation of Plaintiff's Testimony Regarding Pain and Physical Dysfunction

3          1.  Overview

4          At step five, in order to formulate an RFC, the ALJ considers the extent to which a

5   claimant's symptoms affect her ability to perform work-related functions.  In this case plaintiff

6   testified at the hearing that her fibromyalgia pain was debilitating and that peripheral neuropathy,

7   secondary to diabetes, severely limited her ability to stand and to ambulate.  She reported that she

8   is able to sit for 30 minutes at a time, stand for 30 minutes at a time, and that she falls frequently.

9   She testified that she is able to walk for 10 or 15 minutes, but must hold onto a wall for balance.

10  She testified that she can lift only 5 pounds or less.  She came to the hearing in a wheelchair and

11  said that she had recently started using it.  She testified that she is unable to bathe or dress without

12  assistance.  AR 39-52.

13         The ALJ found that "the claimant's statements concerning the intensity, persistence and

14  limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other

15  evidence in the record for the reasons explained in this decision."  AR 18.  The ALJ therefore

16  discounted the credibility of plaintiff's testimony to the extent it was inconsistent with the RFC.

17         2.  Governing Legal Principles

18         In the Ninth Circuit, evaluating a plaintiff's subjective testimony is a two-step process.

19  First, the claimant must provide "objective medical evidence of an underlying impairment 'which

20  could reasonably be expected to produce the pain or other symptoms alleged.'"  Garrison v.

21  Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028,

22  1035–36 (9th Cir. 2007) (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991))).  The

23  claimant need not, however, provide evidence that her impairment would result in the same

24  severity of pain or other symptom alleged.  Garrison, 759 F.3d at 1014.

25         Second, if the claimant succeeds in providing objective evidence of the impairment and

26  "there is no evidence of malingering," the ALJ cannot reject the claimant's testimony about the

27  severity of such symptoms without "specific, clear and convincing reasons for doing so."  Id. at

28  1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  The clear and

1  convincing standard is "not an easy requirement to meet" and is in fact the most demanding

2  standard in such cases. Garrison, 759 F.3d at 1015.

3         While an ALJ's credibility finding must be properly supported and sufficiently specific to

4  ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective

5  statements, an ALJ is also not "required to believe every allegation" of disability.  Fair v. Bowen,

6  885 F.2d 597, 603 (9th Cir. 1989); Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).[3]

7         B.  The ALJ Did Not Err in Evaluating Plaintiff's Testimony

8         The ALJ found that while plaintiff's impairments could result in the symptoms she

9  reported, evidence in the record did not support the claimed severity and limiting impact of those

10 symptoms.  AR 18.  Plaintiff alleges error in the ALJ's failure to fully credit plaintiff's testimony

11 as to the limiting effects of her carpal tunnel syndrome, diabetes mellitus, cervical impairment,

12 shoulder impairment, and fibromyalgia.  ECF No. 13 at 15.  Like the ALJ and the parties, the

13 court addresses each of these impairments in turn.

14        1.  Carpal Tunnel Syndrome

15        Plaintiff testified that her two carpal tunnel surgeries in 2015 were the reason she spent

16 only four months of that year working as a pharmacy technician.  AR 38-40.  The ALJ noted that

17 the CTS in the right hand did not significantly improve after treatment, including surgery.  AR 19.

18 A second surgery in January 2016 did yield some improvements, but plaintiff still endorsed

19 paresthesias and pain in that hand.  AR 19.  CTS in the left hand, meanwhile, never merited

20 surgery.  AR 19.  Studies in 2018 showed mild CTS in both hands but "no electrodiagnostic

21 evidence of radial neuropathy, plexopathy or radiculopathy" in either one.  AR 19.  Plaintiff had

22 full range of motion of both wrists and slight reduction in grip strength, if any at all, but pain in

23 the elbows when touched and some reduction in sensation.  AR 19.  The ALJ found that these

24

25

26

27

28

---

[3]  In this regard, so long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing."  Thomas, 278 F.3d at 959.  Defendant argues that the clear and convincing standard in Garrison conflicts with the "substantial evidence" standard in 42 U.S.C. § 405(g).  ECF No. 19 at 4, n.1; 759 F.3d at 1015.  Defendant conflates the evidentiary burden the ALJ must meet in its decision with the standard of review that courts must apply when analyzing such decisions.  In any case, defendant believes that the ALJ's decision could meet either standard in this case.  The court agrees.

1  results demonstrated plaintiff could lift and carry at a "light level" and occasionally push or pull,

2  but should avoid climbing ladders and scaffolding and limit crawling as a safety precaution.  AR

3  19.

4          Plaintiff argues that the ALJ did not adequately explain why this evidence undermines,

5  among other things, her assertion that she can only lift five pounds.  ECF No. 13 at 16.  The ALJ

6  adequately explained his reasoning by noting contrary exam results.  On various occasions in

7  2016 and thereafter, doctors examining the wrists have found no muscular atrophy (AR 351, 609,

8  1320), full range of motion (AR 351, 1251), no more than slight weakness in a symmetrical grip

9  (AR 351, 483, 483, 1320), 10% or "some" diminution in sensation (AR 351), whole person

10  impairment of 5% or less (AR 351, 437), and little neuropathy (AR 437).  In September 2016, Dr.

11  David Broderick specifically noted that plaintiff's grip strength allowed her to grip 10-20 pounds

12  on the right hand and 10-15 on the left.  AR 438, 1105.  In April 2017, Dr. Shin recorded

13  plaintiff's grip strength as 4 kg in her left hand and 8 kg on her right.  AR 1251.  Plaintiff has

14  failed to cite evidence demonstrating a subsequent decline in grip strength.  The ALJ committed

15  no error.

16          2.  Diabetes Mellitus

17          Plaintiff testified that even with insulin to treat her diabetes, her blood glucose levels

18  remain at 500-600 mg/dL.  AR 44.  Her diabetes has resulted in leg neuropathy.  AR 44.  She has

19  never been hospitalized or had emergency treatment for diabetes itself, but her physicians have

20  commented on it whenever she is hospitalized for other reasons.  AR 44-45.  Plaintiff testified as

21  follows regarding symptoms attributable at least in part to diabetic neuropathy.  She can sit for

22  about 30 minutes at a time, after which she must lie down for 45 minutes.  AR 46.  She can also

23  stand for about 30 minutes.  AR 46.  Plaintiff also began falling a lot for the two years preceding

24  the hearing, about every two weeks or about sixty-five times total, hurting a knee and breaking a

25  toe in the process.  AR 43, 50.  She can walk for about 10-15 minutes, but during that time she

26  must hold onto a wall because she does not know when she will fall.  AR 47.  Doctors cannot

27  explain these falls, and a spinal epidural to learn more would be dangerous due to high glucose

28  levels related to her diabetes.  AR 47-48.  Plaintiff therefore started using a wheelchair about two

1   or three months before the hearing.  AR 47-48.  She uses it whenever she goes out and has

2   ordered a walker for at-home use, but it has not arrived yet.  AR 49-50.  She also has a cane, but

3   she remains too "wobbly" even with it.  AR 49.

4        The ALJ found that although plaintiff initially had diminished sensation in her toes and

5   increased pain, her sensation was restored over time and she longitudinally "walked with a steady

6   and unassisted gait, and demonstrated normal balance[.]"  AR 19.  The ALJ observed that this

7   was the case even when plaintiff sought treatment for recurring falls in February and April 2022.

8   AR 19.  Although plaintiff asserted that she needs a wheelchair, there was no reference in the

9   medical record to such a need; the ALJ found only a reference to needing a cane in January 2023.

10  AR 19.  Plaintiff's diabetes itself and the accompanying nerve pain were at least partially

11  managed with medication, and exacerbations requiring urgent care were infrequent.  AR 19.  The

12  ALJ concluded that in addition to the CTS-based limitations, plaintiff could perform light

13  exertional activities but should only occasionally push and pull and should avoid "concentrated

14  exposure to moving mechanical parts[.]"  AR 19-20.

15       Regarding wheelchair use, plaintiff testified that this need was a recent development that

16  had arisen three months or so before the hearing.  AR 47.  She now argues that the record would

17  not reflect this need because the last date on which defendant either asked for or received relevant

18  records was June 12, 2023, before the wheelchair was ordered.  ECF No. 13 at 17 (citing AR

19  2363).  As to the walking cane, plaintiff argues that the record shows she had "just bought" it in

20  late January 2023.  ECF No. 13 at 18 (citing AR 2022).  Plaintiff then argues that the ALJ

21  otherwise did not explain how the cited evidence undermines her testimony.  ECF No. 13 at 18.

22       As defendant points out, it was incumbent on plaintiff to produce any subsequent medical

23  records reflecting worsening balance.  ECF No. 19 at 8-9; Gray v. Commissioner, 365 Fed. Appx.

24  60, 63 (9th Cir. 2010).  As a general rule, a claimant cannot be found disabled "unless he

25  furnishes such medical and other evidence of the existence thereof[.]"  42 U.S.C. § 423(d)(5)(A)

26  (emphasis added); see also 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for

27  providing the evidence we will use to make a finding about your residual functional capacity.").

28  An ALJ is not required to credit plaintiffs' testimony on an issue "without objective evidence to

                                        10

1   support their claims." Gray, 365 Fed. Appx. at 63. If pertinent evidence postdated any request

2   the Commissioner makes for such evidence, the plaintiff cannot argue that its absence from the

3   record justifies crediting an otherwise unsupported assertion.

4         As the ALJ noted, the medical record includes various examinations showing that plaintiff

5   had a normal gait (AR 590, 592), normal balance (AR 1185, 1193, 1255), and intact sensation in

6   her lower extremities (AR 630). The ALJ was not required to ignore years of longitudinal history

7   and accept medically uncorroborated testimony that plaintiff's gait and balance had deteriorated

8   precipitously just after the medical records ended. There was no error.

9         3.   Fibromyalgia

10        Plaintiff testified that she only worked for a few weeks in January 2017 before she was

11  walked off her job. AR 40-41. At that point, plaintiff's fibromyalgia was the condition she held

12  most responsible for her inability to work. AR 41. She would stay in the bathtub, filled with hot

13  water, for 17 hours every day. AR 41. Plaintiff testified that her fibromyalgia began in 2008 and

14  took three years to diagnose. AR 43. Plaintiff initially treated her fibromyalgia with 225

15  micrograms of fentanyl every 48 hours, mostly to avoid leaving work and collecting disability at

16  the time. AR 43, 58. Managing her symptoms remained difficult, and she had trouble

17  remembering how to fulfill her duties at work. AR 43, 58. She also lost a lot of her memory

18  when she stopped taking fentanyl. AR 41-42. She now takes medication daily, some

19  prescriptions every six hours, yet her pain remains at an "eight" on a ten-point scale. AR 42.

20  Plaintiff also began physical therapy about a month and a half before the hearing. AR 42-43.

21        Plaintiff testified that she cannot manage her daily personal care due to pain. AR 48. Her

22  sister helps her get dressed because taking plaintiff off fentanyl caused her to lose a lot of weight

23  and all her muscle tone. AR 48-49. She falls asleep if she tries to drive or cook, possibly because

24  she only sleeps one to three hours each night. AR 49. The only chore she can manage is washing

25  some dishes. AR 49. Plaintiff left her house to go grocery shopping only a couple of times in the

26  year before the hearing, significantly less so after she began falling. AR 51.

27        In reviewing the evidence as to fibromyalgia, the ALJ noted plaintiff's history of heavy

28  opioid utilization. AR 20. The ALJ acknowledged multiple trigger points for pain but found that

11

1  plaintiff managed it, first with a combination of narcotics and nerve pain relievers before

2  discontinuing the narcotics.  AR 20.  Considering this pain management strategy in conjunction

3  with plaintiff's normal gait, the ALJ concluded that plaintiff could still perform at a light

4  exertional level, provided she avoid ladders, scaffolding, and concentrated exposure to moving

5  machinery.  AR 20-21.

6         Plaintiff challenges the ALJ's reliance on her partial response to medication management

7  and on her normal gait.  ECF No. 13 at 20.  She argues that fibromyalgia is poorly understood and

8  inherently eludes objective evidence.  Id. at 20-21 (citing Benecke v. Barnhart, 379 F.3d 587,

9  590, 594 (9th Cir. 2004), and Social Security Ruling ("SSR") 12-2p).  Plaintiff further argues that

10  the ALJ's assessment of her pain ignores her multiple complaints throughout 2022 and 2023 of

11  depression, anxiety, and suicidal ideation.  ECF No. 13 at 21-22 (citing AR 2044, 2062, 2065,

12  2074, 2089-90, 2100).

13         As the Ninth Circuit noted in Benecke, fibromyalgia "is diagnosed entirely on the basis of

14  patients' reports of pain and other symptoms."  379 F.3d at 590.  Whether a plaintiff is diagnosed

15  with a condition like fibromyalgia, however, is a separate inquiry from the degree of pain a

16  particular plaintiff feels due to a given condition.  See Garrison, 759 F.3d at 1014-15.  SSR 12-2p

17  recognizes that fibromyalgia symptoms can wax and wane so that a person may have "bad days

18  and good days."  SSR 12-2p § VI.D.  An ALJ should account for this by considering "a

19  longitudinal record whenever possible" to determine a claimant's RFC.  Id.

20         The ALJ satisfied his obligation to consider the longitudinal record, including the record

21  as to mental health.  Immediately following the discussion of fibromyalgia as a medical

22  impairment, the ALJ turned to discussion of plaintiff's mental impairments and specifically

23  addressed her "anxiety and depression symptoms secondary to her medical condition."  AR 21.

24  (citing AR 1904, 2369).[4]  This discussion reflects the longitudinal analysis that SSR 12-2p

25  requires.

26         Citing visit notes from August 21, 2018, the ALJ attributes some of plaintiff's fidgetiness

27
_____

28  [4]  Although the ALJ cites Exhibit 27F/7 in the decision, the record's last exhibit is marked 17F.
AR 21.  The ALJ presumably sought to cite Exhibit 17F/7.

12

1   and anxiety to opioid withdrawal.  AR 21 (citing AR 559).  Even while exhibiting anxiety,

2   plaintiff "exhibited well-groomed appearance, pleasant demeanor, cooperative behavior, normal

3   speech, anxious mood, logical thought process, full orientation, normal attention, normal

4   concentration, intact memory, normal fund of knowledge, fair insight and fair/good judgment[.]"

5   AR 21.  The ALJ further noted that plaintiff had longitudinally denied mental symptoms and had

6   "unremarkable" mental status examination results.  AR 21 (citing AR 366-67, 381-82, 391, 550,

7   554, 562, 1020, 2005, 2012, 2063-64, 2075, 2085, 2411).

8        Plaintiff took antidepressant medication to manage her pain symptoms.  AR 21.  During

9   an August 7, 2019 medical examination, plaintiff was "pleasant and cooperative in nature[,]…had

10  no problems effectively communicating[,]" and could "follow instructions and maintain

11  concentration adequately[.]"  AR 21 (citing 1008-16).  During a December 2022 visit, Dr.

12  Michael Schorr observed that the plaintiff's anxiety was stable due to her current treatment plan.

13  AR 21, 2394.  The ALJ found these portions of the record inconsistent with the allegation that

14  plaintiff's anxiety or concentration issues were disabling.  AR 21.  To account for infrequent

15  anxiety and reports of frustration or depression, the ALJ did limit plaintiff to simple, routine tasks

16  and decisions as well as to "occasional interaction with the public."  AR 21.

17       Closer examination of the record supports the ALJ's assessment.  During the August 2018

18  visit, Dr. David Konczal noted that plaintiff had anxiety but "passive [suicidal] ideation only" and

19  believed that plaintiff was suffering from opioid withdrawal.  AR 21, 557, 559.  Dr. Konczal

20  reported that plaintiff had last used the prescribed Xanax in May 2018 and felt that Ambien was

21  no longer effective.  AR 557.  Failure to "follow a prescribed course of treatment" like the Xanax

22  prescription can support the discounting of pain allegations.  See Bunnell v. Sullivan, 947 F.2d

23  341, 346 (9th Cir. 1991) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)); see also

24  Plummer v. Berryhill, Case No. 2:16-cv-00753-AC, 2017 U.S. Dist. LEXIS 108184 at *16-17,

25  2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue

26  recommended treatment discredited…[plaintiff's] subjective testimony.").

27       During both the August 2018 and a December 2019 visit, during which plaintiff was not

28  suicidal, she had a "well-groomed appearance, pleasant demeanor, cooperative behavior, normal

1   speech, anxious mood, logical thought process, full orientation, normal attention, normal

2   concentration, intact memory, normal fund of knowledge, fair insight and fair/good judgment[.]"

3   AR 21 (citing AR 559, 1929).  With few exceptions, medical records reflect normal affect and no

4   or minimal signs of depression, nervousness, or suicidal ideation in April and July 2015 (AR 381-

5   82, 391); January 2016 (AR 366-67); August and September 2018 (AR 550, 554, 562); July 2019

6   (AR 1019-20); October through December 2022 (AR 2074-75, 2083, 2085, 2394); and January

7   and May 2023 (AR 2003, 2005, 2008, 2012, 2064, 2411).[5]

8        Benecke, supra, does not support plaintiff's position here.  In that case the ALJ rejected

9   the claimant's testimony regarding fibromyalgia symptoms primarily because of the claimant's

10   ability to perform routine tasks, even though those activities were "quite limited and carried out

11   with difficulty."  Beneke, 379 F.3d at 594.  The ALJ in that case also rejected the opinion of

12   every treating physician as unpersuasive, partly because he disbelieved plaintiff's testimony, and

13   ignored the fact that they all diagnosed plaintiff with fibromyalgia.  Id.  This case is not

14   analogous.

15        Plaintiff's reliance on Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984), is similarly

16   misplaced.  In Gallant the Ninth Circuit held that although an ALJ may weigh conflicting

17   evidence, he may not reach a conclusion first and then attempt to justify it by ignoring competent

18   evidence in the record that suggests an opposite result.[6]  The ALJ did not do that here.  In this

19   case the ALJ found plaintiff's testimony not entirely because of assessments in the medical

20   record, not despite them.  The cited medical findings indicate that suicidal ideation and anxiety

21   were transient, and the record as a whole does not demonstrate psychological distress of the

22   persistence and severity that would be consistent with plaintiff's testimony about her degree of

23

24   [5]  This was despite complaints of anxiety or suicidal ideation on certain occasions, such as

25   September 26, 2018; September 19 and November 16, 2022; and January 27, 2023.  Compare AR
550, 2062, 2074, 2089 with AR 550, 2064, 2075, 2090.

26   [6]  In that case, all examining physicians concurred that the claimant's medical condition was a
"source of constant pain[,]" at a time when examining physicians' opinions were given

27   controlling weight in decisionmaking.  Gallant, 753 F.2d at 1456.  Because the evidence of a
contrary finding was "insubstantial[,]" the ALJ erred in rejecting the allegations of severe pain.

28   Id.

1    pain.  To the extent there is conflicting evidence on this issue, or that the record supports

2    conflicting interpretations, the ALJ's decision is entitled to deference.  See Burch, 400 F.3d at

3    679; Ford v. Saul, 950 F.3d 1141, 1149 (9th Cir. 2020).

4              4.  Cervical and Shoulder Impairments

5              The ALJ noted that plaintiff sought treatment for "chronic neck pain with radicular pain in

6    her upper extremities, worse on the left, as well as recurrent headaches."  AR 20.  Repeat MRI

7    imaging between 2017 and 2022 showed various issues, but the October 2022 MRI showed

8    "multilevel cervical spondylosis without significant central canal stenosis, and moderate to severe

9    right C3-4 neural foraminal narrowing and severe right C5-6 neural foraminal narrowing[.]"  AR

10    20.  Plaintiff occasionally demonstrated limited cervical range of motion, diminished sensation in

11    certain nerve roots, and tenderness of the occipital muscle group.  AR 20.  At other times, she had

12    a full range of motion and sensation and full strength in her upper body.  AR 20.  Based on this

13    combination of symptoms, the ALJ found that plaintiff could perform light exertional activities

14    but only occasional pushing, pulling, overhead reaching, and crawling.  AR 20.  The ALJ also

15    entirely prohibited climbing ladders and scaffolds.  AR 20.

16              Regarding shoulder impairment, the ALJ noted that after plaintiff sought treatment for

17    chronic left shoulder pain, a March 2017 MRI revealed "mild productive change" and "revealed

18    mild productive change at the acromioclavicular joint and supraspinatus[.]"  AR 20.  Clinical

19    examinations revealed impingement, tenderness around the shoulder and neck, joint tenderness,

20    and separate tenderness when exercising plaintiff's range of motion.  AR 20.  The ALJ found the

21    record as to plaintiff's shoulder consistent with an RFC of light exertional activities with

22    occasional pushing, pulling, overhead reaching, and crawling, but no climbing ladders or

23    scaffolds.  AR 20.

24              Plaintiff argues in general terms that the ALJ failed to explain why the cited evidence

25    undermines her testimony that she has debilitating fibromyalgia pain and can only lift up to five

26    pounds.  ECF No. 13 at 19-20.  While the ALJ did not repeat the discussion in relation to

27    plaintiff's neck and shoulder issues, he discussed the evidence undermining such testimony when

28    analyzing plaintiff's CTS and fibromyalgia.  See supra VI.A.1, VI.A.3.  The ALJ was not

1    required to reproduce his evaluation of the pain testimony in relation to each theoretically distinct

2    source of pain.  The court finds no error.

3              5.  The ALJ's Overall Approach to the Evaluation of Plaintiff's Testimony

4         Plaintiff contends in summation, relying on Brown-Hunter v. Colvin, 806 F.3d 487, 489

5    (9th Cir. 2015), that the ALJ erred by "simply reciting the medical evidence in support of" the

6    RFC, without adequately justifying his rejection of plaintiff's testimony.  ECF No. 13 at 24.  The

7    Ninth Circuit has emphasized that an ALJ must "specify which testimony [he] finds not credible,

8    and then provide clear and convincing reasons, supported by evidence in the record, to support

9    that credibility determination."  Brown-Hunter, 806 F.3d at 489.  Examples of statements that do

10   not meet this standard include "'the individual's allegations have been considered'…'the

11   allegations are [not] credible'",  and "'the claimant's statements concerning the intensity,

12   persistence and limiting effects of these symptoms are not credible to the extent they are

13   inconsistent with the above residual functional capacity assessment[.]'"  Id. at 493 (quoting SSR

14   96-7p, 1996 SSR LEXIS 4 at *3-4, 1996 WL 374186 at *2 (July 2, 1996); Treichler v.

15   Commissioner, 775 F.3d 1090, 1102-03 (9th Cir. 2014)).  Simply summarizing the medical

16   evidence after such a statement, leaving the district court to infer which inconsistencies justify

17   discrediting plaintiff's testimony, is inadequate.  See Brown-Hunter, 806 F.3d at 494.

18        However, that is not what the ALJ did here.  Although the ALJ used the boilerplate

19   statement that "the claimant's statements concerning the intensity, persistence and limiting effects

20   of these symptoms are not entirely consistent with the medical evidence and other evidence in the

21   record," AR 18, he went on to review the medical evidence related to each impairment and tie

22   that evidence to specific functional limitations.  For example, the limited damage to plaintiff's

23   grip strength merited a finding that she "can lift and carry at the light exertional level" despite her

24   claim that she could not.  AR 18-19.  The ALJ explained why the medical record does not suggest

25   the degree of damage to plaintiff's legs represented in her testimony.  AR 18-19.  He balanced the

26   evidence as to plaintiff's symptoms of cervical and shoulder impairment before issuing

27   limitations that account for her purported balance problems.  AR 18, 20.  As to fibromyalgia pain

28   and related psychological distress, the ALJ specifically identified which evidence was

16

1   "inconsistent with disabling mental symptoms" and "disabling anxiety," even as he conceded that

2   plaintiff should be "limited to occasional interaction with the public."  AR 21.  Again, the court

3   finds no error.

## VII.  CONCLUSION

4

5       For the reasons set forth above, IT IS HEREBY ORDERED that:

6       1.  Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;

7       2.  The Commissioner's cross-motion for summary judgment (ECF No. 19) is

8   GRANTED; and

9       3.  The Clerk of the Court shall enter judgment for defendant and close this case.

10  DATED: June 10, 2025

11                                  ALLISON CLAIRE

12                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28